# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JACQUELINE PARKE, as mother
and Special Administrator of the Estate
of Tayler Rock, deceased, and on behalf
of minor Heirs-at-Law of Tayler Rock, deceased,

      Plaintiff,

v.

                                                                      Case No. 15-1372-JTM

COWLEY COUNTY, ET AL.,

      Defendants.

## MEMORANDUM AND ORDER

This action arises out of a fatal shooting of Tayler Rock by defendant Cowley County Sheriff's Deputy Steven Deill. Plaintiff Jacqueline Parke, Rock's mother, alleges among other things, defendants Ana Bedolla and Shea Casurole conspired with Deputy Deill to have Rock stopped, arrested, and possibly injured in order to win their respective child custody and visitation battles with Rock. Before the court is defendant Bedolla's motion to dismiss the claims against her pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 45. For the reasons stated below, the court denies the motion.

**I.     Factual Allegations**

Plaintiff alleged the following non-conclusory, factual allegations regarding Bedolla:

10. [Bedolla was an officer with the Cowley County Sheriff Department of Corrections at all times relevant to this action. One week after the shooting of Tayler Rock, Defendant Cowley County fired her as a corrections officer based upon information discovered during the investigation of the shooting.]

23. Rock[1] and Defendant Bedolla … have [a daughter (AR) together].

24. [In 2014,] Rock and Defendant Bedolla were embroiled in a custody battle over AR, with Rock having physical custody of AR.

25. Defendant Bedolla had some type of relationship with Defendant Deill.

27. In February 2014, Defendant Deill contacted the Arkansas City Police Department ("ACPD") on behalf of Defendant Bedolla in an effort to get Rock arrested but was told that the Captain of ACPD said nothing was going to be done.

28. Defendant Bedolla then emailed Cowley County Sheriff Don Read and Deputy Jeff Moore on February 15, 2014, complaining that ACPD refused to do anything and asking for their assistance.

29. In March 2014, Detective McKee with the ACPD received an "anonymous" tip that Rock was "dealing drugs." ACPD . . . with Cowley County Sheriff's Department Drug Task Force then raided Rock's home and allowed Bedolla to come to the residence and take AR because of a marijuana stem found at his residence.

31. In the weeks prior to the shooting, Rock told others that Defendant Bedolla stated she could have him shot and killed by Cowley County Deputies.

32. Rock and Defendant Casurole … have [a daughter (SR) together].

35. Defendants Bedolla and Casurole communicated with each other regarding Rock.

37. Out of nowhere, Defendant Casurole called Rock on May 31[], 2014, and told him he could see SR, but that he would have to go to Coffeyville, Kansas, to pick up SR for the day and visit her.

---

[1] The court refers to all parties by their last name in this opinion. Accordingly, the court replaced all references to Tayler in the Complaint with his last name.

42. When Rock left Defendant Casurole's residence, she called Defendant Bedolla and told her Rock was headed back to Arkansas City.

43. Defendant Bedolla then contacted Defendant Deill and informed him that Rock was headed back to Arkansas City on Highway 166.

44. Defendant Bedolla stated she called in a "child in need of care" check.

45. An email was sent to other deputies to be on the lookout for Rock, because Rock allegedly had a suspended driver's license.

46. At the time of this incident, Defendant Deill was a Deputy with the Cowley County Sheriff's Department.

47. [Defendant Deill selected a secluded area of Highway 166 to pull over and arrest Rock, and presumably return physical custody of AR to Defendant Bedolla].

48. When Rock's vehicle passed Defendant Deill's vehicle on Highway 166, Defendant Deill then engaged in a traffic stop of Rock's vehicle . . .

62. Rock died as a result of the gunshot wounds he sustained during the encounter with Defendant Deill.

101. [Defendant Deill initiated the traffic stop as a means of furthering his relationship with Defendant Bedolla.]

105. Defendants collectively acted in a conspiracy to deprive Tayler Rock of his 4th and 14th amendment rights by engaging in behavior to ensure Rock was stopped for a minor traffic offense, harassed[,] and detained to further personal feuds.

106. Defendant Deill and Defendant Bedolla acted under the "color of law" as both were employed by Cowley County at the time of these events. Defendant Deill and Defendant Bedolla

utilized their powers to ensure that Rock was stopped, harassed, and injured. These actions were not to advance public safety but to intimidate, humiliate, and embarrass Rock.

107. Defendant Casurole was not an employee of Cowley County but conspired with state actors to ensure the conspiracy was successful by informing Defendant Bedolla of Rock's whereabouts.

**II.   Analysis**

  **A.   Legal Standard**

Rule 12(b)(6) allows dismissal of a complaint only where it appears that the facts alleged fail to state a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying and affirming Twombly's probability standard). The court must assume that all allegations in the complaint are true. *Twombly*, 550 U.S. at 589. "The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support her claims." *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) (citation omitted).

  **B.   Conspiracy under § 1983**

Bedolla argues that plaintiff's lack of specificity regarding the custody battle with Rock and her relationship with Deputy Deill indicates the conspiracy claim against her amounts to nothing more than a private citizen reporting to law enforcement that Rock was driving with a suspended license and asking law enforcement to check on her child's welfare. She contends that these actions were lawful and do not make her a joint, state actor with Deputy Deill. Thus, she contends, she cannot be held individually liable under § 1983.

4

Section 1983 only applies to persons who both deprive others of a right secured by the Constitution or laws of the United States and act under color of a state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). When a constitutional claim is asserted against private parties, to be classified as state actors under color of law, they must be jointly engaged with state officials in the conduct allegedly violating the federal right. *See Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1429 (10th Cir. 1984), *cert. denied*, 474 U.S. 818 (1985); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931-32 (1982); *Adickes*, 398 U.S. at 152. This concerted action constitutes both the state action essential to establish a constitutional violation, and action under color of state law. *See Lugar*, 457 U.S. at 931-32. The Tenth Circuit has held repeatedly that citizens who do no more than complain to law enforcement officers and thereby precipitate an arrest are not state actors. *See Carey v. Continental Airlines Inc.*, 823 F.2d 1402 (10th Cir.1987); *Lee v. Town of Estes Park*, 820 F.2d 1112 (10th Cir.1987). *See also Andresen v. Diorio*, 349 F.3d 8, 13 (1st Cir. 2003) ("[I]t is settled that the fact that private parties give the police information on which official action is then taken does not by itself convert the private parties into state actors.").

The court finds Bedolla's arguments flawed for three reasons. First, details regarding the custody battle between Rock and Bedolla are unnecessary at the pleading stage. Alleging that a custody battle existed sufficiently supports the inference that Bedolla had animosity towards Rock and motive to have him stopped, arrested, and injured.

Second, it is unreasonable to expect plaintiff to set out the exact nature of Bedolla and Deputy Deill's relationship at the pleading stage; particularly when that information is a matter best known by defendants. The allegations that Bedolla and Deputy Deill both worked for the Sheriff's Office (Complaint, ¶¶ 9-10) and that Deputy Deill contacted the ACPD on Bedolla's

behalf in February 2014 (*Id.* at ¶ 27) support an inference that they were acquainted, perhaps even closely.

Third, even if reporting a misdemeanor and asking for a welfare check were lawful acts, plaintiff alleged Bedolla conspired to do more than have Rock stopped and arrested. She allegedly threatened Rock weeks prior to the shooting that she could have him shot and killed by Cowley County Deputies (*Id.* at ¶ 31), and made good on the threat by having Casurole lure Rock into driving to Coffeyville and having Deill stop Rock in a secluded area (*Id.* at ¶¶ 37, 42-48, 105-110). The separate factual allegations that Bedolla contacted Deill prior to the stop (*Id.* at ¶ 47) and then called in a "child in need of care" check (*Id.* at ¶ 48), presumably to 911, suggest something more was afoot than a private citizen reporting a crime. For purposes of the motion to dismiss, the court concludes that plaintiff has pled enough facts to survive 12(b)(6)-dismissal.

**IT IS THEREFORE ORDERED** this 3rd day of March, 2017, that Bedolla's motion to dismiss (Dkt. 45) is **DENIED**.

s/ J. Thomas Marten
Chief United States District Judge